1
2
3
4
5
6

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

7
8

9  ROBERT MCGUIRE                        )        3:10-cv-00488-HDM (WGC)
                                         )
10           Plaintiff,                  )        **REPORT AND RECOMMENDATION**
                                         )        **OF U.S. MAGISTRATE JUDGE**
11      vs.                              )
                                         )
12  STATE OF NEVADA, *ex. rel.*          )
    NEVADA DEPARTMENT OF                 )
13  CORRECTIONS, *et. al.*               )
                                         )
14           Defendants.                 )
                                         )

15
16      This Report and Recommendation is made to the Honorable Howard D.  McKibben,

Senior United States District Judge. The action was referred to the undersigned Magistrate

Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before

the court is Defendants' Motion for Summary Judgment. (Doc. # 79, Doc. # 81 (Errata).)[1]

Plaintiff opposed (Doc. # 84) and Defendants have replied (Doc.  # 92). After a thorough

review, the court recommends that Defendants' motion be denied.

## I. BACKGROUND

At all relevant times, Plaintiff Robert McGuire (Plaintiff) was an inmate in custody of

the Nevada Department of Corrections (NDOC). (Pl.'s Compl. (Doc. # 10) at 1.) The events

giving rise to this litigation took place while Plaintiff was housed at Ely State Prison (ESP). (*Id.*)

Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Plaintiff

originally filed his Complaint in the Seventh Judicial District Court of the State of Nevada, in

28

---

[1] Refers to court's docket number.

1 and for the County of White Pine, and it was subsequently removed. (*See* Doc. # 1.) Defendants

2 are Tom Stubbs and David Drummond.[2]

3      Plaintiff alleges that on August 24, 2008, Defendants used excessive force against him

4 while he was handcuffed and in leg irons, resulting in injuries that included a large swelling

5 above his left temple that required surgery. (Doc. # 10 at 1.) He asserts that he continues to

6 suffer dizziness, blurred vision, damaged nerves, headaches, and joint damage. (*Id.*) On

7 screening, the court determined that Plaintiff states a colorable claim for excessive force under

8 the Eighth Amendment. (Doc. # 9 at 4.)

9      Defendants move for summary judgment, arguing: (1) the force used was reasonable and

10 not excessive; (2) Defendants were not in charge of the spontaneous use of hands on force

11 involving Plaintiff, and were merely acting under the orders of Sergeant Ronald Bryant, and

12 therefore did not personally participate in the alleged constitutional violation; (3) Defendants

13 are entitled to qualified immunity; and (4) Plaintiff is not entitled to punitive damages.

14 (Doc. # 79.)

15                    **II. LEGAL STANDARD**

16      "The purpose of summary judgment is to avoid unnecessary trials when there is no

17 dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*,

18 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in

19 favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing

20 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate

21 if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that

22 there is no genuine issue as to any material fact and that the movant is entitled to judgment as

23 a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the

24 material facts at issue, however, summary judgment is not appropriate. *See Anderson*, 477 U.S.

25 at 250.

26      The moving party bears the burden of informing the court of the basis for its motion,

27

28      [2]The State of Nevada *ex. rel.* NDOC and Michael Lee were previously dismissed. *See* Docs. # 28, # 73.

1    together with evidence demonstrating the absence of any genuine issue of material fact.

2    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence

3    in an inadmissible form, only evidence which might be admissible at trial may be considered

4    by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

5         In evaluating the appropriateness of summary judgment, three steps are necessary:

6    (1) determining whether a fact is material; (2) determining whether there is a genuine issue for

7    the trier of fact, as determined by the documents submitted to the court; and (3) considering

8    that evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250.

9    As to materiality, only disputes over facts that might affect the outcome of the suit under the

10   governing law will properly preclude the entry of summary judgment; factual disputes which

11   are irrelevant or unnecessary will not be considered. *Id.* at 248.

12        In determining summary judgment, a court applies a burden shifting analysis. "When

13   the party moving for summary judgment would bear the burden of proof at trial, 'it must come

14   forward with evidence which would entitle it to a directed verdict if the evidence went

15   uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of

16   establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R.*

17   *Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal

18   citations omitted). In contrast, when the nonmoving party bears the burden of proving the

19   claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence

20   to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the

21   nonmoving party failed to make a showing sufficient to establish an element essential to that

22   party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at

23   323-25. If the moving party fails to meet its initial burden, summary judgment must be denied

24   and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress &*

25   *Co.*, 398 U.S. 144, 160 (1970).

26        If the moving party satisfies its initial burden, the burden shifts to the opposing party

27   to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v.*

28

3

1   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute,

2   the opposing party need not establish a material issue of fact conclusively in its favor. It is

3   sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

4   parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

5   *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted). The

6   nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations

7   that are unsupported by factual data. *Id.* Instead, the opposition must go beyond the assertions

8   and allegations of the pleadings and set forth specific facts by producing competent evidence

9   that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

10       At summary judgment, a court's function is not to weigh the evidence and determine the

11   truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

12   While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be

13   drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not

14   significantly probative, summary judgment may be granted. *Id.* at 249-50, 255 (citations

15   omitted).

16                              **III. DISCUSSION**

17   **A. Excessive Force Standard**

18       The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S.

19   Const. amend. VIII. It "embodies broad and idealistic concepts of dignity, civilized standards,

20   humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal

21   quotations omitted). The "unnecessary and wanton infliction of pain...constitutes cruel and

22   unusual punishment forbidden by the Eighth Amendment." *Id.* (quoting *Whitley v. Albers*,

23   475 U.S. 312, 319 (1986).

24       "[W]henever prison officials stand accused of using excessive physical force in violation

25   of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-

26   faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

27   *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Whitley*, 475 U.S. at 320-21; *Watts v.*

28

4

1   *McKinney*, 394 F.3d 710, 711 (9th Cir. 2005); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th

2   Cir. 2003). "When prison officials maliciously and sadistically use force to cause harm,

3   contemporary standards of decency are always violated." *Hudson*, 503 U.S. at 9 (citing *Whitley*,

4   475 U.S. at 327).

5       In determining whether the use of force is excessive, courts are instructed to examine

6   "the extent of the injury suffered by an inmate[,]" "the need for application of force, the

7   relationship between that need and the amount of force used, the threat 'reasonably perceived

8   by the responsible officials,' and 'any efforts made to temper the severity of the forceful

9   response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

10       An inmate need not establish serious injury; however, the lack of serious injury is

11   relevant to the Eighth Amendment inquiry. *See Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010).

12   "The extent of injury may [ ] provide some indication of the amount of force applied." *Id.*

13       That being said, not "every malevolent touch by a prison guard gives rise to a federal

14   cause of action...The Eighth Amendment's prohibition of 'cruel and unusual' punishments

15   necessarily excludes from constitutional recognition *de minimis* uses of physical force,

16   provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"

17   *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327); *see also Wilkins*, 130 S.Ct. 1178

18   ("An inmate who complains of a 'push or shove' that causes no discernible injury almost

19   certainly fails to state a valid excessive force claim." (citing *Hudson*, 503 U.S. at 9)). "Injury

20   and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.

21   An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive

22   force claim merely because he has the good fortune to escape without serious injury." *Wilkins*,

23   130 S.Ct. at 1178-79. If the nature of the injuries is more than *de minimis*, but still "relatively

24   modest," the inmate's damages will likely be limited. *See id.* at 1180.

25       Courts must be deferential when reviewing the necessity of using force. *See Whitley*, 475

26   U.S. at 321-22; *see also Norwood v. Vance*, 591 F.3d 1062, 1067 (9th Cir. 2009), *cert. denied*,

27   131 S.Ct. 1465 (Feb. 22, 2011) ("Prison officials are entitled to deference whether a prisoner

28

challenges excessive force or conditions of confinement." (citing *Whitley*, 475 U.S. at 322)).

**B. Summary of Facts and Evidence**

On the date in question, August 24, 2008, defendant Stubbs and defendant Drummond were employed as correctional officers by NDOC and were assigned to ESP's Correctional Emergency Response Team (CERT). (Doc. # 79 at 4 ¶¶ 2-3; Doc. 79-6 at 2 ¶ 2 (Drummond Decl.); Doc. # 79-7 at 2 ¶ 2 (Stubbs Decl.).) Michael Lee and Scott Manning were also correctional officers assigned to CERT, and Ronald Bryant was the correctional sergeant assigned to CERT. (Doc. # 79 at 4 ¶¶ 4-6.) Plaintiff was an inmate in custody of NDOC, housed at ESP. (Doc. # 79-9 25:18-20 (McGuire Trans.).)[3]

At approximately 1:00 a.m. on August 24, 2008, an ESP correctional officer was stabbed by Plaintiff through the food slot of ESP cell number 2B-14 which, at that time, housed Plaintiff and a cell mate. (Doc. # 79 at 6 ¶ 11; *see also* Doc. # 79-9 at 25:21-25, 26:1-6, 19-24, 27:13-18 (McGuire Trans.); Doc. # 84 at 7 ¶ 2 (McGuire Decl.).) This cell was part of a maximum lock up unit. (Doc. # 79 at 6 ¶ 11; *see also* Doc. # 79-9 25:23-24 (McGuire Trans.).) At around 3:00 a.m., ESP's CERT arrived at the cell, and Plaintiff and his cell mate refused to submit to restraints. (Doc. # 79 at 7 ¶ 12; Doc. # 79-6 at 2 ¶ 3(Drummond Decl.); Doc. # 79-7 at 2 ¶ 3 (Stubbs Decl.); *see also* Doc. # 79-9 at 29:9-13 (McGuire Trans.).) Thus, a planned use of force cell extraction commenced. (Doc. # 79 at 6; Doc. # 79-6 at 2 ¶ 3 (Drummond Decl.); Doc. # 79-7 at 2 ¶ 3 (Stubbs Decl.).) Chemical agents had to be applied to the cell to effectuate the extraction. (Doc. # 79-6 at 2 ¶ 3 (Drummond Decl.); Doc. # 79-7 at 2 ¶ 3 (Stubbs Decl.); Doc. # 79-9 29:13-19 (McGuire Trans.); Doc. # 84 at 7 ¶ 3 (McGuire Decl.).) At around 3:21 a.m., Plaintiff underwent a post cell extraction medical examination in the hallway. (Doc. # 79 at 6 ¶ 13; Doc. # 79-9 29:12-15 (McGuire Trans.); Doc. # 84 at 7 ¶ 5 (McGuire Decl.).) After the medical examination, Plaintiff was physically escorted outside of the unit, across the yard, and into hallway of the property room by defendant Stubbs, defendant Drummond, Michael Lee,

---

[3]The page references to Plaintiff's deposition transcript are to the court's docket page numbers and the line numbers of the transcript, and not to the deposition transcript page numbers.

1    and Scott Manning, who were accompanied by Sergeant Bryant. (Doc. # 79 at 7-8 ¶ 15; Doc. #

2    79-6 at 2 ¶ 3 (Drummond Decl.); Doc. # 79-7 at 2 ¶ 3 (Stubbs Decl.); *see also* Doc. # 79-9

3    29:24-25 (McGuire Trans.); Doc. # 84 at 7 ¶ 7 (McGuire Decl.).)

4    Defendants assert that during this escort to the property room, Plaintiff attempted to

5    kick an officer, and Sergeant Bryant verbally warned Plaintiff not to kick backwards towards

6    the escorting CERT officers. (Doc. # 79 at 8 ¶ 16; Doc. # 79-6 at 2-3 ¶ 3 (Drummond Decl.);

7    Doc. # 79-7 at 2 ¶ 3 (Stubbs Decl.).) Subsequently, Plaintiff attempted to kick his foot

8    backwards again, and Sergeant Bryant ordered a spontaneous use of hands on force. (Doc.

9    # 79 at 8 ¶¶ 18-19; Doc. # 79-6 at 3 ¶ 3 (Drummond Decl.); Doc. # 79-7 at 2 ¶ 3 (Stubbs Decl.).)

10   Sergeant Bryant ordered the CERT officers to place Plaintiff on the ground. (Doc. # 79 at 9

11   ¶ 20; Doc. # 79-6 at 3 ¶ 3 (Drummond Decl.); Doc. # 79-7 at 2 ¶ 3 (Stubbs Decl.).) Defendant

12   Drummond assisted in placing Plaintiff on the ground by controlling his legs. (Doc. # 79 at 9

13   ¶ 20; Doc. # 79-6 at 3 ¶ 3 (Drummond Decl.).) Defendant Stubbs assisted in placing Plaintiff

14   on the ground by placing both hands on Plaintiff's right shoulder and applying pressure to

15   secure Plaintiff on the ground. (Doc. # 79 at 9 ¶ 20; Doc. # 79-7 at 2 ¶ 3 (Stubbs Decl.).) A

16   camera and medical staff were called for at this point. (Doc. # 79-6 at 3 ¶ 3 (Drummond Decl.).)

17   This is the incident out of which Plaintiff's excessive force claim arises (and not the earlier

18   planned use of force cell extraction). (Doc. # 79 at 9 ¶ 23.)

19   Plaintiff asserts that when he was being escorted to the property room, his right big toe

20   got caught in the shackle chain and he shook it to get it free, and Sergeant Bryant warned him

21   if he kicked back at the officers he would use the taser. (Doc. # 79-9 31:1-8 (McGuire Trans.);

22   Doc. # 84 at 7 ¶ 7 (McGuire Decl.).) Plaintiff asserts that he told the officers, "I'm not kicking

23   at you guys. You guys got to slow down. I'm tripping on this chain." (Doc. # 79-9 at 31:7-10

24   (McGuire Trans.); Doc. # 84 at 7 ¶ 7 (McGuire Decl.).) Plaintiff asserts that they continued on,

25   but the officers did not slow down, and Plaintiff's toe got caught in the chain again. (Doc. # 79-

26   9 at 31:12-20 (McGuire Trans.); Doc. # 84 at 7 ¶ 7 (McGuire Decl.).) Before Plaintiff could get

27   his foot back underneath him, he claims that both his feet were taken out from under him and

28

1   he was dragged to the entrance of the property room, and Sergeant Bryant said, "I've had
2   enough. Put him down." (Doc. # 79-9 at 31:20-25, 32: 1, 40:15-25 (McGuire Trans.); Doc.
3   # 79-10 at 1:1-13 (McGuire Trans.); Doc. # 84 at 7 ¶ 7 (McGuire Decl.).) Plaintiff claims he was
4   dragged into the hallway, and the next thing Plaintiff remembered was his head hitting the
5   floor really hard, being hit twenty to thirty times in the face and neck, and feeling an officer's
6   right knee hit his head. (Doc. # 79-9 at 32:1-25, 39:15-20, 40:2-12 (McGuire Trans.); Doc. # 84
7   at 7 ¶¶ 7-9 (McGuire Decl.).)

8       At approximately 3:30 a.m., Plaintiff underwent a post spontaneous use of hands on
9   force medical examination in the property room hallway. (Doc. # 79 at 9 ¶ 24; Doc. # 79-6 at
10  3 ¶ 3 (Drummond Decl.); Doc. # 79-7 at 2 ¶ 3 (Stubbs Decl.); see also Doc. # 79-9 ) at 33:11-12
11  (McGuire Trans.); Doc. # 84 at 7 ¶ 10 (McGuire Decl.).) Plaintiff claims to have told the nurse
12  that he felt dizzy, and he thought he was going to vomit and pass out. (Doc. # 84 at 7 ¶ 11.) He
13  asserts that the nurse looked him over, but offered no other treatment even though he was
14  bleeding and had open wounds. (Id.) Upon completion of the medical examination, Plaintiff
15  was escorted to cell number two in the property room. (Doc. # 79-6 at 3 ¶ 3 (Drummond
16  Decl.); Doc. # 79-7 at 2 ¶ 3 (Stubbs Decl.); Doc. # 79-9 at 34:12-17 (McGuire Trans.).)

17      An Unusual Occurrence Report was prepared concerning the medical examination
18  following the spontaneous use of force. (Doc. # 79 at 9 ¶ 24; Doc. # 78 at 3 (Ex. A-2).) The
19  Unusual Occurrence Report notes the following objective medical findings: a gash above the
20  right eye, nose bleed, lump on the left temporal side of the head, a small abrasion on the top
21  of the head, and no profuse bleeding. (Id.) It also notes the following subjective complaints:
22  Plaintiff stated that he felt dizzy, and he felt like passing out. (Doc. # 78 at 3 (Ex. A-2).)
23  Plaintiff was to be monitored and referred to a provider if necessary. (Id.)

24      At his deposition, Plaintiff testified about the extent of the injuries he suffered as a result
25  of the spontaneous use of force. Plaintiff claims that he was still bleeding significantly the day
26  after the incident. (Doc. # 79-9 at 35:9-12 (McGuire Trans.).) He had a lot of swelling under his
27  left temple that pushed his eye closed. (Doc. # 79-10 at 19:9-15 (McGuire Trans.).) He could
28

8

1   barely open his mouth, and could not feel his hands for approximately two weeks after the

2   incident. (*Id.* at 19:17-19.) His right forearm was cut open, and he had multiple abrasions on

3   his knees, and the tops of both of his feet were split open. (*Id.* at 19:23-25, 20:1-3.) Plaintiff

4   claims that he experienced sharp pain in the back of his neck, as well as migraines and pain in

5   his back. (*Id.* at 20:4-15.) Plaintiff asserts that he still has a "pins and needle[s] feeling[]" in

6   his wrists. (*Id.* at 20:15-19.) He asserts that the bump near his temple continued to grow from

7   the date of the incident until February, 2010, when he eventually had to undergo surgery. (*Id.*

8   at 21:1-6, 25:3-4; *see also* Doc. # 84 at 8 ¶¶ 14, 16 (McGuire Decl.).) Plaintiff also claims to

9   have suffered emotional injuries as a result of the incident. (Doc. # 79-10 (McGuire Trans.)

10   at 28:15-25, 29:1-10, 32:3-25.)

11       In support of his opposition, Plaintiff submitted medical records, and the relevant

12   portions span from August 27, 2008 through February 12, 2010. (*See* Doc. # 90.) The progress

13   notes entry for the date of the incident, August 24, 2008, references the Unusual Occurrence

14   Report. (*Id.* at 10.) The entry dated August 27, 2008, several days after the incident, indicates

15   the observation of black eyes and abrasions on Plaintiff's face. (*Id.*) Plaintiff denied blurry

16   vision or headaches at that time. (*Id.*) No further action was recommended. (*Id.*) Plaintiff was

17   next seen on September 26, 2008, for complaints of a bump on his head in connection with the

18   use of force on August 24, 2008. (*Id.*)

19       Plaintiff was seen on December 22, 2008, for complaints of back pain. (Doc. # 90 at 9.)

20   He was told to kite for a new mattress and to stop exercising until his back no longer hurt. (*Id.*)

21       On May 12, 2009, Plaintiff complained of a tender, protruding blood vessel that he had

22   on his head since August 2008. (Doc. # 90 at 9.) He appeared in no acute distress. (*Id.*) A

23   consultation was scheduled with Dr. Mar. (*Id.*) Plaintiff was seen regarding the left temporal

24   injury again on June 2, 2009. (*Id.* at 8.) On October 6, 2009, Plaintiff reported that the bump

25   had gotten larger. (*Id.*) He was referred for a surgery consultation. (*Id.*) He was seen once again

26   regarding the bump on his forehead on November 4, 2009, when it was noted to be a large

27   cystic lesion. (*Id.* at 7.) He was referred to Dr. Gedney for an evaluation. (*Id.*)

28

1      On November 30, 2009, Plaintiff complained of "electric pain" in his back, neck and

2   head on the left side. (Doc. # 90 at 7.) He was seen for his head condition again on

3   December 8 and 17, 2009. (*Id.* at 6.) He was transferred for a consultation with Dr. Gedney.

4   (*Id.*) At that time, it was noted that Plaintiff was receiving medication for migraines. (*Id.*)

5      Plaintiff was seen again on December 30, 2009. (Doc. # 90 at 5.) Plaintiff relayed that

6   he had a head injury from August of 2008, when he claimed to have received blows to the head.

7   (*Id.*) He reported experiencing migraines. (*Id.*) The progress notes indicate the observation of

8   the lump on the left side of Plaintiff's head. (*Id.*) It was diagnosed as a "probable old

9   hematoma" and Plaintiff was referred to a surgeon for possible surgery and opinion. (*Id.* at 4.)

10   The hematoma was removed in February of 2010. (*See id.* at 3-4.)

11      There is no video of the spontaneous use of hands on force, but a video recording does

12   exist of the events that occurred *afterwards*. (Doc. # 79 at 9 ¶¶ 22, 25.) The video shows the

13   initial planned use of force cell extraction, and some time later follows an officer who is

14   responding to the property room after a spontaneous use of force. (Doc. # 77 (Ex. F) (submitted

15   in chambers) at approximately 35:05.) The video does show Plaintiff on the ground outside the

16   property room, the medical examination conducted after the spontaneous use of force, and

17   what appears to blood on the ground after Plaintiff had been removed from the ground and

18   taken to the cell in the property room. (*See id.* from approximately 36:35 to 42:40.)

19      Sergeant Bryant prepared an incident report following the incident. (Doc. # 79-2 at 3

20   (Ex. A-1).) Sergeant Bryant's report states the following:

21      On August 24, 2008 at approximately 0325 hrs Inmate McGuire, Robert
      # 83383 was being escorted to property cell #2 subsequent to another incident

22      in which inmate McGuire attempted to stab an officer and chemical agents had
      to be used to remove him and his cellmate from cell 2B14. During the escort on

23      the phase one yard walkway at the turn near the court yard swing gate at Ely
      State Prison Inmate McGuire struck backwards with his right foot attempting to

24      strike escorting officers. I Correctional Sergeant Ronald Bryant gave Inmate
      McGuire clear verbal orders not to attempt to kick officers or force would be

25      used. As the escorting officers were entering the property hallway through the
      side door Inmate McGuire again attempted to strike escorting officers with his

26      right foot by kicking backwards towards me. I ordered escorting officers to place
      Inmate McGuire on the floor and secure him there. Officers used hands on force

27      and placed Inmate McGuire on the ground. I notified shift Commanded [sic]
      Lieutenant Tony Jones of the spontaneous use of force and requested a

28

1     supervisor and camera to respond. Support staff arrived with video camera.
Inmate McGuire was seen by medical and escorted to cell # 2 in property without
2     further incident. See IR-2008-ESP-000921 for use of force reports and incident
file.
3 (Doc. # 79-2 at 3 (Ex. A-1).)

4     Sergeant Bryant appears to have authored a second incident report which states, in

5 pertinent part:

6     At approximately 0317 hrs I supervised the escort of Inmate McGuire into unit
one-two hallway so medical staff could examine him for injuries. At approximate
7     0320 hrs I escorted the Inmate McGuire from Unit 2 to the property holding
area. I was responsible for the use of an electronic tazer if necessary during the
8     escort. At approximately 0325 hrs during the escort as the escort was making the
turn towards property in front of the swing gate area Inmate McGuire attempted
9     to kick at escorting officers with right leg going backwards. I gave Inmate
McGuire [sic] that if he didn't walk without resisting he would be tazered. The
10     escort continued and at approximately 0327 hrs as the escort was entering the
property hallway through the door Inmate McGuire again attempted to kick
11     escorting officers with his right leg in a backwards motion. I then ordered the
escorting officers to place Inmate McGuire on the ground and securing [sic] him
12     there. Officers used hands on force and placed Inmate McGuire on the floor of
the Property hallway. I notified Lieutenant Jones that spontaneous force had
13     been used please respond with camera operator to property. At approximately
0335 hrs staff arrived and Inmate McGuire was seen by medical and checked for
14     injuries. I briefed on camera what had transpired leading to the use of force.
(Doc. # 79-2 at 23 (Ex. A-1).)

15

16     Correctional Officer Scott Manning's incident report states, in pertinent part:

17     Orders were then given to escort Inmate Robert McGuire NDOC # 83383 to the
Property holding cell # 2. During the escort inmate Robert McGuire NDOC
# 83383 attempted to kick at the officers legs. Orders were given to inmate
18     Robert McGuire NDOC # 83383 to not attempt that again. Once at the Property
side door, inmate Robert McGuire NDOC # 83383 again attempted to kick at the
19     officers legs. Orders were given to place him on the ground. I assisted in placing
inmate Robert McGuire # 83383 to the ground by placing my left hand on his
20     right shoulder and my right hand on his right forearm. I then applied a
downward motion and placed inmate Robert McGuire NDOC # 83383 to the
21     ground by utilizing my left hand in the upper portion of his back and utilized my
right hand in holding his head still as to stop the inmate from turning his head.
22     Once the command was given to place Inmate Robert McGuire NDOC # 83383
to his feet, I then assisted in lifting him up on his right side. Inmate Robert
23     McGuire was then evaluated by medical staff and orders were given to place him
in property holding cell # 2. At approximately 3:35 AM, I then continued to
24     assist the escort and placed Inmate Robert McGuire NDOC # 83383 in property
holding cell # 2.
25 (Doc. # 79-2 at 12 (Ex. A-1).)

26 ///

27 ///

28

Defendant Drummonds' incident report states, in pertinent part:

> After Inmate McGuire was examined team number one was then ordered to escort the inmate to the property room cell number 2. As inmate McGuire was being escorted he attempted to kick an officer at this time Sgt. Bryant warned Inmate McGuire that if he attempted to kick an officer again that the tazer would be used. As Inmate McGuire was being escorted into the property room outer door he attempted to kick an officer. At this time the order was given to place the Inmate on the ground. Inmate McGuire was placed on the ground and at this time I Officer David Drummond controlled the Inmates legs at this time a camera and medical staff was called for. Inmate McGuire was examined by medical staff. Upon completion of the examination Inmate McGuire was escorted to Cell # 2 in the property room.

(Doc. # 79-2 at 13 (Ex. A-1).)

Defendant Drummond denies that Plaintiff was dragged, punched, or stricken during the spontaneous use of hands on force. (Doc. # 79-6 at 3 ¶¶ 4-6 (Drummond Decl.).) Defendant Drummond maintains that he used only that amount of force which was necessary under the circumstances. (*Id.* ¶ 7.)

Correctional Officer Michael Lee's incident report states, in pertinent part:

> I then assisted in escorting Inmate McGuire to Property Intake cell # 2. During the escort inmate McGuire attempted to kick back and Seargant [sic] Bryant advised McGuire that if this happened again he would be placed on the ground. Upon arrival at the property door Inmate McGuire # 83383 attempted to kick back a second time at escorting officers when Seargant [sic] Bryant gave the order to place Inmate McGuire on the ground. At this time I maintained control of McGuire's left arm and forced him to the ground, securing him until medical staff arrived. Upon arrival of medical staff I assisted in getting McGuire to his feet for medical assessment, see medical report. Inmate McGuire was then escorted to property cell # 2 where I removed leg restraints without further incident.

(Doc. # 79-2 at 14 (Ex. A-1).)

Defendant Stubbs' incident report states, in pertinent part:

> After the chemical agents were used Inmates McGuire # 83383 and [redacted] was [sic] restrained, I then assisted in escorting Inmate McGuire # 83383 to property where he was to be put in cell 2. Once in the property hall way Inmate McGuire # 83383 then tried to kick at an officer at which time I assisted in placing the Inmate on the ground by placing both hands on his right shoulder and applying pressure to secure him to the ground. Once Inmate McGuire # 83383 was secured on the ground I assisted by placing my left hand on his head and my right hand on his left shoulder to keep him from moving around. At that time the camera arrived and he was then looked at by medical and placed in cell 2 in property with no further incident.

(Doc. # 79-2 at 16 (Ex. A-1).)

Defendants Stubbs maintains that Plaintiff was never dragged, punched, or stricken

12

1   during the spontaneous use of force, and he used only the amount of force that was necessary

2   under the circumstances. (Doc. # 79-7 at 3 ¶¶ 4-8 (Stubbs Decl.).)

3   Plaintiff claims that after the incident, in January of 2011, defendant Stubbs admitted

4   to assaulting him and explained that it was to set a precedent as Plaintiff had assaulted a guard

5   that day. (Doc. # 84 at 8 ¶ 19 (McGuire Decl.).)

6   **C.  Defendants' argument**

7   Defendants contend that the use of force on August 24, 2008, was reasonable under the

8   circumstances. (Doc. # 79 at 13-15.) First, Defendants argue that Plaintiff's injuries were not

9   so serious as to require transport to the prison's medical facility, and were consistent with the

10  amount of force necessary to secure a non-compliant prisoner on the ground. (*Id.* at 13.)

11  Second, Defendants assert there is no evidence to support Plaintiff's claim that Defendants

12  punched or struck him other than Plaintiff's own self-serving testimony. (*Id.* at 14.) Third,

13  Defendants claim that the circumstances, including the fact that a correctional officer had been

14  stabbed through the food slot of Plaintiff's cell earlier, chemical agents had to be used to extract

15  Plaintiff and his cell mate from the cell, and Plaintiff had been observed kicking backwards

16  towards the officers, warranted the spontaneous use of hands on force. (*Id.*)

17  Defendants also argue that summary judgment should be granted because they were

18  simply acting according to Sergeant Bryant's orders. (Doc. # 79 at 15-16.)

19  Lastly, Defendants contend they are entitled to qualified immunity, and that Plaintiff

20  may not recover punitive damages. (Doc. # 79 at 16-19.)

21  **D.  Plaintiff's argument**

22  Plaintiff asserts the following preliminary issues: (1) summary judgment is

23  inappropriate because there are ongoing discovery disputes; and (2) Plaintiff's deposition

24  should not be considered because Defendants did not specify how the deposition would be

25  recorded in the deposition notice. (Doc. # 84 at 1.)

26  On a substantive basis, Plaintiff argues that genuine issues of material fact exist as to

27  whether Defendants used excessive force on August 24, 2008. (Doc. # 84 at 2-3.) First,

28

13

1  Plaintiff asserts that he was not trying to kick the officers as Defendants suggest, and even if

2  he did, the force utilized in response was excessive. (Doc. # 84 at 2 ¶ C.) Second, Plaintiff

3  argues that force was not utilized in a good faith effort to maintain or restore discipline, but in

4  retaliation for Plaintiff's earlier assault of a correctional officer. (*Id.* at ¶ D, Doc. # 84 at 8 ¶ 27.)

5  Third, Plaintiff claims that the extent of his injuries establish that the force utilized was

6  excessive. (Doc. # 84 at 2 ¶ E.) Plaintiff emphasizes the seriousness of the injuries he suffered,

7  and claims that his injuries resulted in his having surgery and suffering from ongoing

8  neurological problems. (*Id.*) Fourth, Plaintiff states that he was not simply taken two feet to

9  the ground as Defendants suggest. (*Id.* at 3 ¶ G.) Instead, he maintains that he was dragged,

10  slammed against the ground, and punched twenty to thirty times. (*Id.*) He believes the assault

11  was perpetrated by defendant Stubbs and that defendant Drummond sat by and watched and

12  did nothing to stop the assault. (*Id.* at ¶ H.) Finally, Plaintiff asserts that punitive damages are

13  justified because the use of force was sadistic and malicious and not in good faith. (*Id.* at 5.)

14  **E. Analysis**

15  **1. Preliminary Issues**

16  First, Plaintiff's argument that summary judgment is inappropriate because of ongoing

17  discovery disputes (*see* Doc. # 84 at 1) is moot in light of the court's issuance of orders denying

18  his motion to compel, and denying his request for reconsideration. (*See* Docs. # 83, 96.)

19  Second, Plaintiff objects to the utilization of his deposition transcript in connection with

20  the instant motion because the deposition notice did not state the manner in which the

21  deposition would be recorded. (Doc. # 84 at 1.) The court notes that Plaintiff failed to provide

22  the court with a copy of the deposition notice so the court could undertake an analysis of the

23  propriety of the notice. Moreover, Defendants are correct that they were granted leave of court

24  to take Plaintiff's deposition, and at that time, Plaintiff was informed that Plaintiff would be

25  given a copy of his deposition transcript at Defendants' expense. (*See* Doc. # 92 at 2, Docs. #

26  44, # 45.)  Plaintiff had notice that his deposition would be transcribed and that the would

27  receive a copy of the transcript at Defendants' expense. In addition, Plaintiff went forward with

28

14

his deposition in spite of the asserted procedural defect. Accordingly, the court finds Plaintiff's deposition transcript is properly considered in connection with the instant motion.

Finally, the court takes note of Defendants' objections to the court's consideration of paragraphs 6, 15, 17, 18, 20-23, 25-28, and 30 of Plaintiff's declaration on the bases that the statements set forth therein are inadmissible, contain statements that have not been made on personal knowledge, and/or concern matters of which Plaintiff is not competent to testify. (Doc. # 92 at 6.) While asserting this blanket generalization, Defendants do not provide an analysis with respect to each paragraph in order to inform the court of the specific reason the paragraph should not be considered. Instead, the court is left to guess which of the three generalized bases asserted by Defendants apply. Notwithstanding Defendants' failure to specially argue why a certain paragraph is improper, the court will review the propriety of each of the statements, in turn.

Paragraph 6 states, "[t]he video camera operator was told to turn camera away from me at this point by Lt. Jones against operational procedure and Administrative Regulations [sic] 405." (Doc. # 84 at 7 ¶ 6.) This statement appears to contain inadmissible hearsay; however, the court is not presented with sufficient information to determine whether an exception applies. Nevertheless, the court does not find this paragraph to be relevant to the issue of whether Defendants used excessive force, and therefore, it will not be considered.

Paragraph 15 contains a statement about conclusions drawn by Plaintiff's medical providers. (Doc. # 84 at 8 ¶ 15.) The court will not consider Plaintiff's statement, but rather, will review and take into consideration the medical records submitted in support of Plaintiff's opposition. (*See* Doc. # 90.)

Paragraph 17 states, "I received nerve damage and migraine headaches from this incident." (Doc. # 84 at 8 ¶ 17.) Plaintiff is permitted to testify regarding his perceptions of his own health condition; however, the court will rely on the medical records regarding any actual diagnoses. (*See* Doc. # 90.)

Paragraph 18 states, "I have been denied head/brain scans that would prove the

15

1   nerve/brain injury. Even though I was told on numerous occasions that I would see a specialist;

2   which I still haven't." (Doc. # 84 at 8 ¶18.) This action does not involve an Eighth Amendment

3   deliberate indifference to medical care claim; therefore, this statement is irrelevant.

4   Paragraphs 20-23 contain statements regarding alleged prior incidents of excessive force

5   at ESP and are not relevant to whether or not excessive force was applied to Plaintiff on August

6   24, 2008. (See Doc. # 84 at 8 ¶¶ 20-23.)

7   Paragraphs 25-26 are more appropriately considered as part of Plaintiff's legal

8   argument, and the court will treat them as such. (Doc. # 84 at 8 ¶ 25.)

9   Paragraph 27 states, "[o]fficers did not use hands on force to restore, or maintain order

10   but to assault met and cause me serious injury in a sadistic manner." Plaintiff is allowed to

11   assert his perception that the officers use of force was malicious and sadistic, just as Defendants

12   are allowed to contend that their use of force was reasonable and in good faith. (See Doc. # 79-

13   6 at 3 ¶¶ 7-8 (Drummond Decl.) ("I did not personally use any force beyond that which was

14   authorized and necessary under the circumstances, and/or that I would regard as excessive..."

15   "I did not witness Tom Stubbs or any other NDOC staff member using force beyond that which

16   was authorized and necessary under the circumstances, and/or that I would regard as

17   excessive..."); Doc. # 79-7 at 3 ¶¶ 7-8 ("I did not personally use any force beyond that which was

18   authorized and necessary under the circumstances, and/or that I would regard as excessive..."

19   "I did not witness any NDOC staff member using force beyond that which was authorized and

20   necessary under the circumstances, and/or that I would regard as excessive...").)

21   In paragraph 28, Plaintiff asserts that the Department of Justice was undertaking an

22   investigation of this incident. This statement is not relevant to the instant litigation. Nor is

23   Plaintiff's statement in paragraph 30 regarding his perception of the adequacy of the prison's

24   investigation and its effect on subsequent alleged incidents relevant to this litigation. The court

25   will disregard these assertions.

26   **2. Genuine Issues of Material Fact Exist**

27   Viewing the evidence in the light most favorable to Plaintiff, as the court must, the court

28

16

1    finds that genuine issues of material fact exist as to whether the force applied to Plaintiff on

2    August 24, 2008, in connection with the spontaneous use of force near the property room, was

3    in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause

4    harm. *See Hudson*, 503 U.S. at 6-7.

5        First, there are material factual issues regarding the need for the application of force,

6    the amount of force used, and the relationship between these elements. Defendants contend

7    that Plaintiff attempted to kick back towards officers and was warned that conduct would result

8    in the use of a taser. Defendants claim that Plaintiff again kicked back toward officers and

9    Sergeant Bryant gave the order to take Plaintiff down. Plaintiff, on the other hand, asserts that

10   he never tried to kick back at the officers, but instead was tripping on the ankle chain. He

11   claims that he informed the officers of this and asked them to slow down, to no avail. When he

12   tripped again, this culminated in the use of force. While Defendants argue that they used only

13   that amount of force that was necessary to take Plaintiff down to the ground and secure him

14   there, Plaintiff maintains that he was dragged, slammed into the ground, and then punched

15   twenty to thirty times. The fact finder will need to resolve the differing versions of events that

16   took place with respect to the circumstances leading up to the use of force and the amount of

17   force used.

18       Second, there are material factual issues regarding the extent of Plaintiff's injuries.

19   While Defendants claim that the injuries sustained were a reasonable consequence under the

20   circumstances, Plaintiff maintains that he suffered significant injuries, including those

21   referenced in the Unusual Occurrence Report, and additionally that he suffered abrasions to

22   his knees and arms, headaches, migraines, back and neck pain, and that he eventually had to

23   undergo surgery to remove the lump near his temple. In addition, while the Unusual

24   Occurrence Report states that there was no profuse bleeding, the video appears to show a

25   pooling of blood on the ground where the incident occurred. Again, a fact finder should be

26   tasked with resolving these disputes concerning Plaintiff's injuries in determining whether the

27   force utilized was reasonable or excessive.

28

1    In light of the these material factual issues, summary judgment should be denied.

2    **3. Personal Participation**

3    Despite admitting their direct involvement in the spontaneous use of hands on force,
4    Defendants argue that they are entitled to summary judgment on the basis that they did not
5    personally participate in the alleged constitutional violation because they were merely following
6    the orders of Sergeant Bryant. (Doc. # 79 at 15-16.)

7    Defendants' reading of the law regarding personal participation in section 1983 cases
8    is completely unsupported.  Defendants cite authority concerning supervisory liability, and
9    utilize it to support their argument that they should somehow be relieved of potential liability
10   for their direct participation in the use of force. (Doc. # 79 at 15-16.)

11   While the court has found that material factual issues exist with respect to the reason
12   for the use of force, the amount of force used, and the extent of Plaintiff's injuries, Defendants
13   do not dispute they directly participated in the spontaneous use of force involving Plaintiff on
14   August 24, 2008. (Doc. # 79-6 at 2-3 ¶¶ 2, 3 (Drummond Decl.) ("I controlled Inmate Robert
15   McGuire's (#83383) legs"); Doc. # 78-7 at 2 ¶¶ 2-3 (Stubbs Decl.) ("I assisted in placing Inmate
16   Robert McGuire (#83383) on he ground by placing both hands on his right shoulder and
17   applying pressure to secure him to the ground.  Once Inmate Robert McGuire (#83383) was
18   secured on the ground, I assisted by placing my left hand on his head and my right hand on his
19   left shoulder to keep him from moving around.").) It is well established that "a person 'subjects'
20   another to the deprivation of a constitutional right, within the meaning of § 1983, 'if he does
21   an affirmative act, participates in another's affirmative act, or omits to perform an act which
22   he is legally required to do that causes the deprivation of which complaint is made.'"
23   *Preschooler II v. Clark County School Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007)
24   (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). If Plaintiff's version of events
25   is believed, a fact finder may conclude that Defendants' conduct alone amounts to a violation
26   of the Eighth Amendment. The fact that Sergeant Bryant gave an order to take Plaintiff down
27   to the ground does not absolve these defendants of potential  liability for their own conduct.

28

1    Nor is defendant Drummond relieved of liability if a jury believes Plaintiff's story that

2    defendant Stubbs inflicted the excessive blows while defendant Drummond idly sat by and did

3    nothing to stop him. *See, e.g., Clem v. Lomeli*, 566 F.3d 1177, 1181 ("[V]iolations of the Eighth

4    Amendment may occur as a result of either 'a prison official's act *or omission*." (quoting

5    *Farmer v. Brennan*, 511 U.S. 825, 834 (1970)) (emphasis original)).

6    ### 4. Qualified Immunity

7    Defendants argue that they are entitled to qualified immunity because Plaintiff cannot

8    set forth facts that would allow a juror to determine that Defendants violated the Eighth

9    Amendment, because they were merely following Sergeant Bryant's orders. (Doc. # 79 at 16-

10   18.)

11   "Qualified immunity shields federal and state officials from money damages unless a

12   plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and

13   (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v.*

14   *al-Kidd*, 131 S.Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982);

15   *see also Padilla v. Yoo* (9th Cir. 2012); *Pearson v. Callahan*, 555 U.S. 223 (2009).

16   A "[g]overnment official's conduct violates clearly established law when, at the time of

17   the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every

18   'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd*,

19   131 S.Ct. at 2083 (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640

20   (1987)); *see also Padilla v. Yoo* (9th Cir. 2012). "We do not require a case directly on point, but

21   existing precedent must have placed the statutory or constitutional question beyond debate."

22   *Id.* "Qualified immunity gives government officials breathing room to make reasonable but

23   mistaken judgments about open legal questions," and courts are "not to define clearly

24   established law at a high level of generality[.]" *Id.* at 2084-85; *see also Dunn v. Castro*, 621

25   F.3d 1196, 1201 (9th Cir. 2010) ("[T]he right allegedly violated must be defined at the

26   appropriate level of specificity before a court can determine if it was clearly established.").

27   Whether a constitutional right was violated and whether the right was clearly established

28   at the time of the violation are legal questions for the court. *See Serrano v. Francis*, 345 F.3d

19

1  1071, 1080 (9th Cir. 2003); *Martinez v. Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003).

2  However, "[i]f a genuine issue of material fact exists that prevents a determination of qualified

3  immunity at summary judgment, the case must proceed to trial." *Serrano*, 345 F.3d at 1077.

4  The court determined that Plaintiff has alleged a colorable claim for excessive force

5  under the Eighth Amendment. Therefore, the only remaining question under qualified

6  immunity is whether the law regarding excessive force was sufficiently clear on August 24,

7  2008, when the spontaneous use of hands on force occurred. Whether or not the force applied

8  in this instance was excessive is a question for the jury. Notwithstanding the existence of

9  material factual issues, the court finds there is no doubt that on August 24, 2008, the law was

10  clear that when force is used in a malicious and sadistic manner to cause harm, and not in a

11  good-faith effort to maintain or restore discipline, the constitution is violated. *See Hudson*,

12  503 U.S. at 6-7, 9. As a result, the court finds Defendants are not entitled to qualified

13  immunity.

14  **5. Punitive Damages**

15  Defendants argue that punitive damages should not be available to Plaintiff because the

16  only evidence that supports Plaintiff's excessive force claim is his own self-serving testimony.

17  (Doc. # 79 at 18-19.)

18  Plaintiff argues that punitive damages are appropriate because the use of force was

19  malicious and sadistic and not in a good faith effort to restore discipline and order. (Doc. # 84

20  at 5.)

21  Punitive damages are recoverable in section 1983 actions. *See Pac. Mut. Life Ins. Co.*

22  *v. Haslip*, 499 U.S. 1, 17 (1991); *Kentucky v. Graham*, 473 U.S. 159, 167 n. 13 (1985); *Dang*

23  *v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005). Punitive damages may be awarded if there is a

24  finding that a defendant's conduct:

25      was malicious, oppressive or in reckless disregard of the plaintiff's rights.
        Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the
26      purpose of injuring another. Conduct is in reckless disregard of the plaintiff's
        rights if, under the circumstances, it reflects complete indifference to the
27      plaintiff's safety or rights, or the defendant acts in the face of a perceived risk that
        its actions will violate the plaintiff's rights under federal law. An act or omission

28

is oppressive if the person who [performs] [fails to perform] it injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by the misuse or abuse of authority or power or by the taking advantage of some weakness or disability or misfortune of the plaintiff.

Model. Civ. Jury Instr. 9th Cir. 5.5 (2007); *see also Dang*, 422 F.3d at 807-08 (finding that punitive damages are appropriate in section 1983 cases where there is a finding of "malicious, wanton, or oppressive acts or omissions").

The court has determined that material factual issues exist regarding whether Defendants utilized excessive force. Should a fact finder believe Plaintiff's version of events, *i.e.*, that Defendants acted sadistically and maliciously in their application of force, the fact finder may determine it is appropriate to award punitive damages. Therefore, summary judgment as to Plaintiff's claim for punitive damages is not appropriate at this time.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order that Defendants' motion (Doc. # 79) be **DENIED**.

The parties should be aware of the following:

1.      That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: June 28, 2012.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE